The case for argument is United States v. Campbell, Ms. Pollack. May it please the court and counsel. My name is Elizabeth Pollack. I'm with the Federal Public Defender's Office for the Central District of Illinois, and I'm here today on behalf of the defendant appellant, Lon Campbell. And we're here again to address some of the conditions of supervised release that were imposed on Mr. Campbell at a sentencing hearing approximately one year ago. This case took a while to get here, and since the sentencing hearing in this case, there have been a plethora of decisions issued regarding the conditions of supervised release. And for the reasons that I'm about to argue, we believe that Mr. Campbell's sentence should be remanded for a full resentencing because the conditions of supervised release that were imposed upon him in the district court are all fundamentally improper as has been recognized by this court. Ms. Pollack, if we remand, should the government be held to its promise to continue to recommend the low end of the guideline range? Your Honor, I believe that it should. Well, the government obviously didn't get its end of the bargain here, right? That's true. They got an appeal after an appeal waiver that's about as thorough as any you can have. But to be fair, the plea agreement, and I believe any agreement when the government commits themselves to something, indicates that the sentence that the defendant receives is supposed to be a legal sentence. And in this case, the conditions of supervision are illegal as has been recognized by the court. Well, but they didn't know that at the time. Nobody objected. Nobody knew that. There was no surprise on these conditions, right? That's correct. They were all in the pre-sentence report, right? They were listed in the pre-sentence report. The judge then went back. She took the recess, came back. Somebody pointed out Thompson to her, I assume. Likely. About eight days earlier, and provided the explanation. She couldn't predict the full flow of our later cases, and nobody objected. That's correct. And to be fair, there have been other decisions that this court has issued in recent months that were very similar circumstances have occurred. And what the court has found, especially recently in the Poulon case, and I believe again in Speed, was that you can't attribute the need to object when the case law was undecided at that point. And to be fair, if the court, what happened in that recess, that 95-minute recess, we don't know. We assume that it was pointed out that Thompson existed. But then the court went and imposed conditions that were overturned in Thompson. Let me go back, though, to the question about the recommendation. Given, I mean, under the circumstances that you're describing, I would think either side would be entitled to rescind the whole plea agreement if they wanted to. If that's the case, then that's the case. And Mr. Campbell is aware of the potential ramifications of a full resentencing, as are all of the defendants that come up here on these issues, and he is willing to accept that. I would hope that the government would not punish him and recommend a higher sentence if that's what they wanted. We'd obviously be requesting that the conditions be fixed and for the court to rebalance supervised release. But Mr. Campbell did argue for the lowest sentence possible, and he could again choose to do that. So that being said, Your Honor, like I said, there have been recent cases where, you know, this is a very limited period of time that we're talking about where pre-sentence reports and sentencings happened immediately prior to or during the time that Thompson was issued, and then the recent case law came out, and so now we're facing these situations. But nothing can change the fact that the conditions that Mr. Campbell is subjected to are overbroad and have vagueness issues. And for somebody who has already had a struggle on supervised release, it is in any defendant's best interest to narrow those conditions and make them as clear as possible. I would have thought it would also have been in his best interest to signal his willingness to cooperate with supervised release conditions, and he focused his sentencing intentions in other directions. Well, I'm not sure what trial counsel strategy was or what that effect would have been. You know, he did have the concurrent issue of the revocation and the new case at the same time. It was similar circumstances. The new charging was similar to what he had previously been convicted of, so obviously he struggled in that arena. But that being said, you know, if he's going, and he's going to be out here in approximately a year, and when that happens, he's going back on supervised release. And when he does that, I mean, clearly even he himself, even though counsel did not object to anything, he had questions about the employment issue and was apparently satisfied with the explanation. Well, he wanted to make sure that he wouldn't be sent to prison if he couldn't get a job. Right, right. But that condition, the reason that this court has found it vague in the past, is because the definition of regularly is not in existence, at least not as defined by the court and wasn't elaborated on by the court. So the question then for him is, even if he can't find anything, and we know that it's difficult on occasion for felons to achieve employment, but if he can't find anything and is only able to secure, let's say, seasonal employment or part-time employment or something like that, is that going to be a violation? And the way that this is defined, you can't tell. And the judge made that very clear, right, in talking over that condition with him. Well, the judge made it clear that he wouldn't be put back in prison if he couldn't get any job. If he was trying to get work or if he didn't. Right. Right. And that's the way these things are handled in the district court, right? Well, one would hope. Well, if you've got a problem, you know, the probation officers work with the offenders. If ultimately they reach some kind of an impasse, it may be necessary to seek either clarification, in extreme cases a violation. But the mechanisms are in place to do that, right? We've got 3583E, right, that allows that. And what that assumes, Your Honor, is that every probation officer fulfills their function as they are supposed to and are not arbitrarily enforced in these conditions. And when you're looking at things, yes, that is absolutely how things should work. And it's how one would hope everything works, where if there's something that can't be determined. I'd be more receptive to the argument, frankly, if somebody were violated for just and sent back to prison for not being, quote, regularly employed or he's got a seasonal job or something like that. I've never seen such a case. Well, there have not been any cases that I'm aware of where that single condition, only the employment condition by itself was sufficient to send somebody back. But we have nine, eight or nine, I can't remember, conditions that are all vague. And it's not just whether or not the person is violated. That person, when they get out of prison, is going to be altering their behavior, I would hope, to try to comply with these conditions. They're going to be changing their lives. They're going to be readjusting to the community. They're trying to comply so that they don't get in trouble. And a reasonable person has to understand what they're supposed to be doing. And just because it should work this way, it should be that a probation officer is reasonable and helpful and understanding and works with the person to try to conform these conditions. But there's no guarantee that that's the case. And just as with every profession, there are bad seeds in every group of people. There are bad lawyers. There are bad police officers. And likely there are bad probation officers. And so these individuals who are being released from prison should have the opportunity, before they're out, to know what they need to be doing. And these are so vague, you know, the association one, the regular employment. And this court has already held on multiple occasions that these conditions are wrong. And so the only question here is, what do we do about it? And the government has stated. Reestablish a parole commission. Right. Well, I suppose that's what the Congress and the commission. Go see the district judge in the first instance under 3583E. I think that after this line of cases has occurred, district courts are changing their practices. And we are trying to do a better job of getting these conditions in better shape before the person is put in prison. But apparently there's no need to object, right? Well, there is now. Why is there now? Because this court has said that there is now. The court said that we are not going to entertain the sentencing hearing. I think it was in Capas. Sentencing hearing is not a dress rehearsal. It sure felt like it for the last year and a half. Well, I understand. But remember that this case, I know that we're here today in January of 2016, but this guy was sentenced in January of 2015. What we're ending up is the Court of Appeals doing the sentencing. Send it back and make the district court redo it. And make them fix it. And then, again, this is going to end. This is going to end because now that these cases have... I'm not sure. The argument, the kinds of attacks on the clarity of the finding of the conditions can go on forever. I say I'm into my rebuttal time. May I reserve? Well, you said in your brief that this is the one about not traveling outside the district without the permission of the court or probation office. You say no reasonable person can be expected to know in detail the geographical boundaries of each federal district. And especially considering that the districts contain multiple counties and are not delineated on any readily available map. Now, the government says that, oh, it's easy. There are maps. They have maps. You can always ask the probation officer for a map. Is that true? I'm not aware of any map that is part of our probation office protocol that is handed out. Which district are you talking about? Your own or the city district? You could take this book and their counties are listed on it. Well, I'm in the central district of Illinois. Mr. Campbell is from Indianapolis. I don't know what their probation office's protocols are. My probation office doesn't hand out maps. It's fair to say that if a person has access to the Internet and is savvy enough to look for it. So your probation officer hands out maps, did you say? No, not that I'm aware of. If you had Internet access and were savvy enough to look, there are websites available where you could discover these boundaries, but the majority of the people that we're talking about are not going to be able to do that. Thank you. Okay, thank you. Ms. Pollack. Ms. Ridgway. Thank you, Your Honor. May it please the Court. Cynthia Ridgway. I'm an assistant U.S. attorney in the Southern District of Indiana, and I was also trial counsel for the United States in the court below. I would echo what Judge Hamilton is pointing out, and that is that this district court, Tanya Walton Pratt, did her very best to follow this court's precedent in Siegel, which happened approximately six or seven months before this defendant was sentenced. Counsel, can you tell me where the initial language came from? I believe, having reviewed much case law, that Siegel was the first that adopted the best principles practice with regard to supervised release conditions. But, I mean, it came from somewhere. I mean, not leaving the district and these other things. It sounds like boilerplate language that came from somewhere. The standard conditions? I'm sorry, Your Honor, I don't know where they originated from. You haven't seen them? Since you were involved in the case itself, where did you go to find them, or did you? The standard conditions are conditions that probation always provides to us, to the prosecutors. That's what my question was. Yes. That has come from the AO's division on probation and pretrial services for decades. Now, what about this district? This is not leaving the district. Nobody knows. I don't know what the boundaries of the Northern District of Illinois are. And I would say to that point that this defendant is on restricted supervised release, and as a result of that restricted supervised release, it is incumbent upon him to determine where his geographic boundaries are. Well, that's absurd. You just asked the probation officer, right? You just asked the probation officer. Does he know? He has many experiences with probation. Are there maps? One of the cases said that they have maps that they can give you. We have maps. I'm not sure if probation in the Southern District provides those to its probationers. But I know that Mr. Campbell was already on supervised release when he committed this offense, so he has the wisdom and the knowledge from his first stint with supervised release as well as the supervised release that he will be facing now. I'm just asking about whether an effort is made to explain to these people or give them a map or something so they know when they have left the district. I'm so glad that you asked that question because, as a practical matter, I think that particularly in the Southern District, I can't answer that for other districts. But in our district, the probation officers go well above and beyond trying to do everything they can to ensure that their probationers comport with the terms. Well, do they give them maps? I don't know for sure. I don't know for sure. If they don't give maps, I don't know how they're going to. Well, they could simply tell the person, don't go above Kokomo. Kokomo, Indiana. Kokomo, Indiana is basically the line that delineates the north from the south. And they could simply say, don't go above Kokomo, and the person would know. It's as simple as that. There are some indication, and I know from being a district judge, that said, let's do it in this district, not in that one. Do it in the Northern District of Illinois, not in the Northern District of Indiana. That's actually a testimony. I would say that with regard to the supervised release conditions, Your Honor, these probation officers do everything they can to ensure that their probationers are compliant. In fact, when they find a violation, it is not until the third or sometimes the fourth violation that anything is even lodged with the district court. And in that case, having done this many, many years, what we do then is we go to the district court, and the district court requires the AUSA or the probation officer to establish scienter, that the person knew that they were in violation of that particular supervised release condition. And even then, the district court gives the defendant many, many opportunities to comply. It is no one's intent for these individuals, having served their sentence in prison, to go back to prison. In fact, what we are doing here and what this district court, going back to the argument that's before the court, what this district court did was to do everything that they could to follow the best practices established in Siegel, then in Thompson, which were, in fact, in place prior to the sentence. Does the district supervised release condition require that the probation service inform the defendant of the boundaries of the district? I'm sure they do. I imagine that they do. You are? I imagine that the probation officer tells the defendant where the district is. Those instructions would not be put in a judgment, right? That's right, Your Honor. But that's part of the probation office works for the district judges, right? Yes, Your Honor. And in the majority of these cases, when the individual is released in this district anyway, and really across the country, they go first to what's called a residential reentry center. And it is at that time that the probation officer first meets with the individual who is about to be released to the community. And in that colloquy with the probation officer, they talk about all of these conditions to ensure that the individual knows full well what the conditions are. But do they give them the boundaries of the district? If they ask. If the person would ask, I can't imagine a probation officer who would say, you're on your own to find it out. How many probation officers are there in your district? I don't know the answer to that, Your Honor. There are probation officers who are assigned to things like electronic monitoring that are different from probation officers who are assigned to- Yeah, pretrial services. Right. About 35. About 35. I was the chief judge of that district until fairly recently. There are only 35 probation officers? Mm-hmm. I bet they're very overworked. They are very overworked. And they will be even more so overworked if they are required to go back and rehash after a person has been sentenced and then serve their time on supervised release, if the person is required to then meet with the individual again afterwards many, many times to rehash what the person already knew. And in this case, Mr. Campbell well knew what the conditions were. There was only one thing he was concerned about, and that was whether or not he could get a job. And the court and the defendant had a colloquy about that where the court described for that defendant that he would not go to jail if there was an adequate attempt by him to simply find a job. I would just say, Your Honor, that for all of these conditions, this district court did what this court has said that we are supposed to do. She found that there was a specific requirement. She articulated it, gave the defendant full notice in advance of the hearing. She found it specific to the 3553 factors in this case. What she didn't do, as the court has found in Siegel, is order the eve of release hearing. But that's something that isn't mandatory, and we would hope that it does not become mandatory. We would hope that's something that, of course, this court has found to be potentially a best practice but isn't mandatory. Okay, what is it you don't want us to say is mandatory? The eve of release meeting between the probationer, the defendant, and the district court. In other words, it would be another hearing before the district court. There's already a meeting with the probation officer and the offender, as you told us, but not a hearing on the record. There would be many practical considerations that we would hope the court would consider before making that a mandatory requirement, such as the defendant might not even be in that same district. The marshals would then have to transport the individual. The new district court might not even be the same person. Then what happens with the person when they're in front of the Southern District of Indiana, for example, and they're from Maryland? Do the marshals then keep the person in custody to take them back to Maryland? Or are they released, as should be the case, and then they have to find their own way? So there are practical considerations that we would hope this court would consider and we stand on our brief unless there are any other questions. Okay, well, thank you, Ms. Ridgway. Thank you, Your Honor. Ms. Pollack, do you have anything further? Just two points. First, to address Ms. Ridgway's point that this would be very difficult for probation officers to deal with, with the extra time involved and having to re-meet with people. Mr. Campbell is in prison, so they haven't had their meeting yet, nor will they until he is released. So it is no extra problem or burden. You've got to go back to court, though. If we add a requirement that they meet with the judge, you don't want to go back to court every time to hash out these things that used to be done just with the probation. That's why we fix them now. Let's face it, we can either fix them now or we can fix them later because the conditions are bad. So if we don't fix them now, we're going to fix them later, and that's the same amount of time involved. As in this case, when a judge gives reasons for a condition or clarifies it in response to the prisoner, can't that provide adequate clarification? Does the condition have to be redrafted if the judge has made clear? Well, I believe technically the oral pronouncement does control, so the judge can significantly alter the conditions verbally. But didn't he do that in several instances? No. It happened in one instance when Mr. Campbell was told that if he didn't get a job or was unable to obtain employment, they wouldn't violate him on that basis alone. Well, what about unless I'm confused in another case? And he also put in there was an exception for family members so that if he had a felon who was a family member, he could associate with the family member. Right, okay, so those are clarifications, right? Those are two clarifications, but neither of them address the vagueness issues with those conditions. Neither of them is what? Neither of them actually address the vagueness issues that existed. Well, I don't understand. Why doesn't that dispel the vagueness? Because the vague part of the work condition is the definition of the word regularly. No, I'm talking about the work condition, the two you mentioned. None of the other conditions were fixed. The one about associating with felonious family members and the one about no, he doesn't have to get a job. Right, so those two were clarified slightly, but the word associate is the problem. Why do you say slightly? Because there's still a problem with them. Why weren't those clarifications adequate? Because they didn't fix the infirmity. The infirmity with the condition of association is the definition of the word associate, not the exception for family members. It's nice that there's an exception for family members, but it doesn't fix it. Wait, what are you talking about? I don't get it. I thought the problems with associating with felons were principally CENTER and a need for a waiver, as in Douglas. Pardon? As in Douglas. You can fix that with the CENTER requirement and the escape valve with consent of the probation officer. I had a conversation with one of your colleagues about this recently, about the felons in the rehab program or in the church program, right? And that takes care of it. Well, but still, to associate is vague. And even that being said, so assuming that's correct. What would be better? A better definition. I would leave that to higher legal minds, Your Honor. Oh, come on. You and your colleagues have brought a whole bunch of these appeals, challenging these conditions, saying these are too vague, and you won't tell us what would be satisfactory? Well, I believe that this court has actually suggested different satisfactory language to handle much of the vagueness concerns. Look, I don't understand you. Now, we're talking about this not knowingly or intentionally associating with individuals. Well, obviously, you shouldn't say knowingly or intentionally. That's just legal jargon nonsense. It says engaged in crime with criminal histories, and then the judge goes on to make clear, you know, you can sort of funny, if you're just at your Christmas dinner or your family barbecue, and your cousin is a convicted felon, that's fine. Okay. Why hasn't this explanation made the condition entirely clear? Because it doesn't address the remaining felonious individuals in the universe apart from his cousin or parents. Well, what on earth is he supposed to say? There are 7 billion people in the world, and I'll now list the 1 million that you're permitted to associate with. Is that what you're saying? No. Could you be realistic? I mean, I agree completely with Judge Hamilton. If you challenge these conditions, you have to suggest the proper condition. I just keep fussing because every time the judge changes it, you'll find another little infirmity in it. Well, that's a fair point. No, that's not right. If the court would like... You're an experienced lawyer. You deal with these people all the time. You should be able to draft a clear condition. And just to say that the judge hasn't addressed the other 7 billion people, that's nonsense. Well, I think the problem is with the term associate, which was found to be vague in prior cases. And if the court would like some proposed language, then I'd be happy to file a post-argument memorandum doing that. But that still doesn't fix the remaining conditions. I don't like knowingly or intentionally, but let's say knowingly. To knowingly associate with individuals engaged in crime or have criminal histories, and you could add to that that it's not ideally drafted, but you could say if you know or suspect that you're dealing with people who are involved in crime or have criminal histories, then that would be perfectly clear. Well, the way to handle it also could be, in one of the sex offender conditions, contact with minors. When that comes up, there is now an exception that says. I'm not talking about contact with minors. I know. Look, I don't like the way you keep squirming. I'm trying to propose the language that the court requested. And in the sex offender condition about minors, it says, except for incidental contact in the normal course of business or something along those lines. Incidental is pretty vague, isn't it? Well, I think that. Normal course of business sounds a lot like regular employment to me. Is that any better? I think that it says in the normal course of commercial business, meaning when you're interacting at a business. And if so, if you're at a store and you see a friend who you know has a felony conviction, are you not allowed to say hello to them? And this condition associating with people with felonies. So what do you propose to deal with that? I would propose putting a caveat at the end, similar to the one at the end of that. Why? It would be concrete. It would say that you cannot associate knowingly with people with felony convictions, except for, in this case, your family members or in the course of incidental contact, just passing by, or in the course of utilizing a regular business or shopping at a mall or something like that. So is that what you suggested to the judge? I wasn't counsel in this case. Oh, I don't care. I would suggest that, yes, if I were. No, no, but what did his lawyer suggest? His lawyer said nothing. The lawyer twice said no objections to any of the conditions which had all been laid out in the pre-sentence report provided well in advance of the sentencing hearing, correct? That's correct. Obviously the lawyer had no knowledge of Thompson. In supervised release, defendants eventually are going to carry around a pamphlet that has all this junk in it. What happened? The parole commission operated doing the very same thing we're doing now, but we never see any cases cited from problems with the parole commission. The only way I can answer that is to say that parole was abolished when I was in third grade, so I'm not sure. We haven't gone back that deep. I suspect, though, we would find these conditions all traced back to parole, standard conditions of parole, which were then, I mean, the bureaucracy gave the, it was the parent bureaucracy to. If the panel has no further questions, I will ask. Why don't the public defenders publish their proposed conditions of supervised release? Well, Your Honor, I could bring that to my superiors. We'll see at the judicial conference. We will probably be discussing these issues. Thank you very much, Your Honor. Okay. Thank you very much, Mr. Ritchway and, of course, Ms. Pollack. And we'll move to our last.